Erik C. Olson (State Bar No. 260452)
eolson@fbm.com
Cameron J. Gibbs (State Bar No. 346524)
cgibbs@fbm.com
Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Attorneys for Plaintiff, CRUISE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRUISE LLC,<br><br>        Plaintiff,<br><br>    vs.<br><br>ACTALENT, INC.,<br><br>        Defendant. | Case No. 3:23-cv-01898<br><br>**COMPLAINT FOR:**<br>**(1) BREACH OF CONTRACT AND**<br>**(2) DECLARATORY JUDGMENT**<br><br>**JURY TRIAL DEMAND** |

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT

43521\16085209.1

Plaintiff Cruise LLC ("Cruise") alleges as follows:

## NATURE OF ACTION

1. This is an action for money damages and declaratory judgment arising from Defendant Actalent, Inc.'s ("Actalent's") material breach of a services agreement with Cruise pursuant to which Actalent, and its predecessor-in-interest, Aerotek, Inc. ("Aerotek") was obligated to "indemnify, defend, and hold Cruise and its Affiliates … harmless from and against any third-party claims" "arising from or relating to" a broad array of circumstances relating to Actalent's employees who performed work for Cruise on a short-term basis. Aerotek/Actalent has materially breached the agreement by failing to indemnify, defend and hold Cruise harmless with respect to at least two third-party lawsuits filed against Cruise in the Superior Court of the State of California for the County of San Francisco relating to Aerotek/Actalent's employees, leaving Cruise to expend attorney's fees and costs to defend itself and to potentially suffer significant judgments. The action also arises from Cruise's refusal to pay Actalent approximately $400,000 Actalent claims it is due under the parties' agreement due to Aerotek/Actalent's prior material breach of the agreement, Cruise's right to setoff amounts due to it under the agreement against amounts due to Aerotek/Actalent, and Aerotek/Actalent's repeated failure to meet invoicing deadlines under the agreement.

## PARTIES

2. Plaintiff Cruise is a limited liability company organized and existing under the laws of Delaware with its principal place of business at 333 Brannan Street, San Francisco, California 94107. Founded in 2013, Cruise is a San Francisco-based company with more than 1,800 employees. Its mission is to build all-electric, zero-emission, automated vehicles that will help save lives, reimagine cities, reduce carbon pollution, redefine time in transit, and restore freedom of movement for individuals.

3. On information and belief, Actalent is a corporation organized and existing under the laws of Maryland, with its principal place of business in Hanover, Maryland.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because

Actalent is a citizen of Maryland and neither Cruise, nor any members of Cruise, are citizens of Maryland. The damages Cruise has or may suffer as a result of Aerotek/Actalent's conduct complained of herein exceeds $75,000, and the damages Actalent claims it suffered as a result of Cruise's alleged breach of the parties' agreement also exceeds $75,000.

5. This Court also has subject matter jurisdiction under 28 U.S.C. § 1367 over any claim in this action over which it does not have original jurisdiction because any such claim is so related to at least one claim within such original jurisdiction of this Court that they form part of the same case or controversy within Article III of the United States Constitution.

6. With respect to Cruise's claims for declaratory judgment, an actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a), and this Court may grant declaratory relief, injunctive relief, and other relief pursuant to 28 U.S.C. §§ 2201-2202. Cruise contends that Actalent has the obligation to indemnify, defend and hold harmless Cruise against the two third-party lawsuits at issue; that Cruise may setoff amounts owed to Cruise under the parties' agreement against any amounts Cruise owes to Actalent under the agreement; and that under the parties' agreement, Aerotek/Actalent forfeited its right to payment of amounts invoiced to Cruise more than 60 days after the invoiced work was performed. Actalent denies each of Cruise's contentions. Actalent has also filed a lawsuit against Cruise in the United States District Court for the District of Maryland, Case No. 1:23-cv-00498-SAG, seeking $406,001.76, plus interest, alleging that Cruise breached the parties' agreement by its refusal to pay certain Actalent invoices (the "Maryland Lawsuit"). Cruise denies that it has breached the parties' agreement as Actalent alleges, including because Actalent committed a prior material breach of the parties' agreement, excusing Cruise from further performance under the contract. The District of Maryland also does not have personal jurisdiction over Cruise, and it is an improper and inconvenient venue for the dispute.

7. This Court has personal jurisdiction over Actalent because Cruise's claims against Actalent arise out of or relate to Actalent's purposeful contacts with California, and the exercise of personal jurisdiction over Actalent in this particular case would comport with principles of fair play and substantial justice.

8.     This Court also has personal jurisdiction over Actalent because it has engaged in systematic and continuous contacts with this State and this County by, *inter alia*, regularly conducting and soliciting business in this State and this County, including through at least a dozen physical offices within the State, and deriving substantial revenue from products and/or services provided to persons in this State and this County.  Actalent has offices located at 611 Gateway Boulevard, Suite 600, San Francisco, California 94080; 2490 Mariner Square Loop, Suite 100, Alameda, California, 94501; 101 Metro Drive, Suite 400, San Jose, California, 95110; 13191 Crossroads Parkway North, Suites 105 & 109, City of Industry, California, 91746; 677 W. Palmdon Drive, Suite 104, Fresno, California, 93704; 10680 Treena Street, Suite 400, San Diego, California, 92131; 1100 Town & Country Road, Suite 1500, Orange, California, 92868; 2751 Park View Court, Suite 221, Oxnard, California, 93036; 9445 Fairway View Place, Suite 210, Rancho Cucamonga, California 91730; 2998 Douglas Boulevard, Suite 350, Roseville, California, 95661; 990 W. 190th Street, Suite 400, Torrance, California, 90502; and 21600, Oxnard Street, Suite 800, Woodland Hills, California, 91367 (see https://www.actalentservices.com/en/locations/north-america-sales (last visited April 11, 2023).

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)-(c) because a substantial part of the events or omissions giving rise to Cruise's claims occurred in this district, and Actalent is subject to this Court's personal jurisdiction.

## DIVISIONAL ASSIGNMENT

10.     Pursuant to Civil Local Rules 3-2 and 3-5, this case should be assigned to the San Francisco Division because a substantial part of the events or omissions giving rise to the claims herein arose in the City and County of San Francisco.

## FACTUAL BACKGROUND

*Cruise and Aerotek, Actalent's Predecessor, Enter Into the Staffing Services Agreement.*

11.     Cruise was founded in 2013 by Kyle Vogt to fulfill his lifelong dream of making cars that could drive themselves. By March 2014, Cruise built its first physical implementation towards a fully automated vehicle when it developed an automated driving system to fit in a car and test drove it on the highway. After presenting the demo at Y Combinator, a seed funding

provider for startups, Cruise became Y Combinator's first incubation in the hardware industry. By December 2015, Cruise was testing automated driving systems in complex environments.

12. For the last several years, Cruise has had a fleet of automated vehicles based on GM's Chevrolet Bolt platform and tests around the clock on public roads in San Francisco. Those vehicles navigate some of the most complex and unpredictable driving environments in the United States. Cruise vehicles encounter construction, cyclists, pedestrians, and six-way intersections over 40 times more frequently in San Francisco than they would in suburban environments. The Cruise vehicles continue to undergo safety testing and validation. Cruise has also started testing its automated vehicles on public roads in Phoenix, Arizona. Cruise's automated driving vehicles currently operate rides available to the public in San Francisco; Phoenix; and Austin, Texas.

13. For the last several years, Cruise has had a need for experienced personnel to perform specialized services for it on a short-term basis. This included a need for numerous Autonomous Vehicle Test Operators ("AVTOs") and Automated Vehicle Trainers ("AVTs") to help train and maintain its autonomous vehicles in San Francisco.

14. On information and belief, Aerotek, Inc. ("Aerotek"), was in the business of providing experienced personnel to perform specialized services on a short-term basis to businesses.

15. Cruise and Aerotek entered into a written "Cruise LLC Staffing Services Agreement," effective as of September 30, 2020 (the "Agreement"). A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

16. Cruise and Aerotek entered into a written "Amendment No. 2 to Cruise LLC Staffing Services Agreement," effective as of January 3, 2022 (the "Amendment"). A true and correct copy of the Amendment is attached hereto as **Exhibit B**.

17. Actalent claims to be the successor-in-interest to Aerotek with regard to the Agreement.

***Aerotek/Actalent's Obligation to Indemnify Cruise Against Third-Party Claims.***

18. The Agreement provides, "Supplier will be the sole employer of each Worker and, subject to the terms and conditions of this Agreement, will have the sole right and responsibility to

hire, discipline, terminate, assign, and reassign such Workers. … The primary human resource control over such Workers shall be exercised by the Supplier." Agreement at ¶ 2.2.  The Agreement defines "Supplier" as Aerotek.  Agreement at Recitals.  The Agreement defines "Worker" as "a Candidate provided and assigned by the Supplier to Cruise for work with Cruise, approved by Cruise, and for which Cruise pays the Supplier for such work on an hourly basis through the Supplier payroll."  Agreement at ¶ 1.1.  The Agreement defines "Candidate" as "candidate whom the Supplier refers to Cruise for potential temporary placement."  *Id.*

19. The Agreement repeatedly provides that Workers are employees of Aerotek, not Cruise.  For example, paragraph 2.7 of the Agreement provides, in relevant part, "All Workers will be employees of Supplier. Supplier agrees to pay each Worker's wages, FICA, federal and state (and local if applicable) income taxes, and workers compensation while the Worker works on the assignment for Cruise for the position filled by Supplier."  Paragraph 2.8 of the Agreement provides, in relevant part, "Supplier shall take appropriate steps to maintain the status of all such Workers as employees of Supplier (and not as employees of Cruise) … ."  Paragraph 2.13 of the Agreement provides, in relevant part, "Supplier must conduct orientation services for each Worker onboarded at Cruise. Orientation services should include, but are not limited to: 1) Introduction to the Supplier/Cruise relationship (i.e., Supplier is sole employer of record and Cruise is a customer of Supplier) … ."

20. Aerotek agreed to broadly indemnify Cruise against third-party claims, including claims brought by Workers.  Paragraph 6 of the Agreement provides:

> Supplier shall indemnify, defend, and hold Cruise and its Affiliates (including its and their respective directors, officers, employees, contractors and agents) harmless from and against any third-party claims (including claims made by or on behalf of a Candidate, Worker or other employee of Supplier), allegations, demands, liabilities, penalties, award of attorney's fees, damages, costs, expenses (including reasonable attorneys' fees) or other losses ("Claim") to the extent arising from or relating to: (a) any failure of Supplier or its employees, representatives, agents and approved subcontractors to comply with applicable Laws (b) any infringement, misappropriation or other violation of any third-party Intellectual Property rights by the performance or receipt of the Services or use of the Deliverables ("Infringement"), (c) any negligence or breach of this Agreement or applicable SOW by Supplier or its employees, representatives, agents and approved subcontractors, (d) any acts or

omissions of Supplier or its employees, representatives, agents and approved subcontractors in providing Services, or (f) any act or omission by Workers in the performance of Work as contemplated by Cruise and Supplier. Cruise will give Supplier prompt written notice of any Claim and will cooperate in relation to the Claim at Supplier's expense.  Supplier will have the right to control and settle any Claim for which it is providing defense and indemnity without a reservation of rights, except that Supplier may not settle a Claim without Cruise's prior written consent (not to be unreasonably withheld) if the settlement requires Cruise to admit any liability or take any action or refrain from taking any action (other than ceasing use of infringing materials). If Supplier declines to defend and indemnify Cruise in relation to a Claim without a reservation of rights, Cruise may retain its own counsel at Supplier's expense.   The foregoing defense, indemnification and hold harmless obligations shall not apply to the extent that any Claim, including those by or on behalf of a Worker or Candidate, arises from the negligence of or intentionally wrongful acts or omissions of Cruise, its Affiliates and their employees, representatives, agents and/or subcontractors (excluding Supplier and Workers acting in the capacity of a subcontractor).

*Aerotek/Actalent's Obligation to Submit Invoices Within 60 days of Work.*

21.  Under the Agreement, Aerotek/Actalent was obligated to submit invoices to Cruise within 60 days of the invoiced Work being performed.  Paragraph 2.10 of the Agreement provides:

> Unless otherwise directed by Cruise, Supplier and Workers shall use the VMS for all phases of the Worker's engagement process, including receiving requisitions, submitting candidates, and time tracking. Supplier will require that Workers report all billable time, expenses and miscellaneous fees which are to be submitted through the VMS. Supplier or Workers must report all time and expenses weekly. **Time, expenses, and miscellaneous fees submitted more than sixty (60) days after Work is performed will not be accepted or paid, and Supplier expressly forfeits any right to such payment.**

(Emphasis added).  The Agreement defines "Work" as "work performed by Workers assigned to Cruise by Supplier." Agreement at ¶ 1.1.  The Agreement defines "VMS" as "the vendor management system used by Cruise. The VMS is a web-based application that stores contingent worker and SOW data for Workers providing Work to Cruise." *Id.*

*Cruise's Right to Setoff Amounts Owed to Aerotek/Actalent with Amounts Owed to Cruise.*

22.  Section 4.4 of the Agreement provides:

> In addition to any right of setoff or recoupment provided by law, all amounts due to Supplier shall be considered net of indebtedness of Supplier to Cruise and its Affiliates. Cruise shall have the right

to setoff against or to recoup from any amounts due to Supplier from Cruise and its Affiliates.

*Aerotek/Actalent Fails to Meet Its Indemnity Obligations With Respect to Two Lawsuits.*

*The Judd Lawsuit.*

23. On September 2, 2021, an individual named Jonas Judd sued, *inter alia*, Cruise and Justin Lee in the Superior Court for the State of California for the County of San Francisco, Case No. CGC-21-595016, for damages he alleged he suffered when he, while riding a scooter, allegedly collided with a Cruise vehicle under Lee's operation in San Francisco (the "Judd Lawsuit"). Attached hereto as **Exhibit C** is a true and correct of the Complaint filed in the Judd Lawsuit. At the time of the incident, Mr. Lee was an AVTO assigned to Cruise's San Francisco location and a Worker under the Agreement, and thus an employee of Aerotek/Actalent, not Cruise. Also at the time of the incident, the Cruise vehicle that Mr. Lee was operating was under manual control, meaning that Mr. Lee, rather than Cruise's autonomous vehicle software, was in control of the vehicle. Mr. Judd's complaint alleged causes of action against Cruise and/or Mr. Lee for: (1) intentional tort, (2) intentional infliction of emotional distress, (3) negligence, (4) statutory liability/permissive use, (5) negligent entrustment, (6) negligent training, (7) vicarious liability entrustment, and (8) strict products liability-bystander theory. He claimed damages of an unspecified amount.

24. Pursuant to paragraph 6 of the Agreement, Cruise demanded that Aerotek/Actalent defend, indemnify, and hold Cruise harmless against Mr. Judd's claims because Mr. Judd's claims, if true, arose from a "failure of Supplier or its employees, representatives, agents and approved subcontractors to comply with applicable Laws," "negligence or breach of this Agreement or applicable SOW by Supplier or its employees, representatives, agents and approved subcontractors," "acts or omissions of Supplier or its employees, representatives, agents and approved subcontractors in providing Services," and/or an "act or omission by Workers in the performance of Work as contemplated by Cruise and Supplier." Agreement at ¶ 6.

25. To the present, Aerotek/Actalent has refused to defend, indemnify, and hold Cruise harmless against Mr. Judd's claims, leaving Cruise to incur attorney's fees and costs defending

itself against Mr. Judd's claims in the Judd Lawsuit and potentially suffering a judgment in excess of $75,000 as a result of those claims. On April 6, 2023, Cruise and Judd agreed to resolve the matter. Nonetheless, Cruise incurred fees, costs, and settlement expenditures as a result of those claims.

**The Montemayor Lawsuit.**

26. On September 2, 2022, an individual named Francisco Montemayor sued, *inter alia*, Actalent and Cruise in the Superior Court for the State of California for the County of San Francisco, Case No. CGC-22-601565, for damages he alleged he suffered as a result of the termination of his employment by Actalent (the "Montemayor Lawsuit"). Attached hereto as **Exhibit D** is a true and correct of the Complaint filed in the Montemayor Lawsuit. At the time of his termination by Actalent, Mr. Montemaryor was an AVTO assigned to Cruise's San Francisco location and a Worker under the Agreement, and thus an employee of Aerotek/Actalent, not Cruise. Moreover, Actalent was the sole decision maker in the termination of Mr. Montemayor's employment. Mr. Montemayor's complaint alleged causes of action against Cruise and/or Actalent for: (1) disability discrimination in violation of the Fair Employment and Housing Act ("FEHA"), (2) failure to provide an interaction process in violation of FEHA, (3) failure to provide reasonable accommodations in violation of FEHA, (4) retaliation in violation of FEHA, (5) wrongful termination in violation of public policy, and (6) intentional infliction of emotional distress. He claimed general damages of at least $200,000 and special damages of at least $200,000.

27. Pursuant to paragraph 6 of the Agreement, Cruise demanded that Aerotek/Actalent defend, indemnify, and hold Cruise harmless against Mr. Montemayor's claims because Mr. Montemayor's claims, if true, arose from a "failure of Supplier or its employees, representatives, agents and approved subcontractors to comply with applicable Laws," "negligence or breach of this Agreement or applicable SOW by Supplier or its employees, representatives, agents and approved subcontractors," "acts or omissions of Supplier or its employees, representatives, agents and approved subcontractors in providing Services," and/or an "act or omission by Workers in the performance of Work as contemplated by Cruise and Supplier." Agreement at ¶ 6.

28. To the present, Aerotek/Actalent has refused to defend, indemnify, and hold Cruise harmless against Mr. Montemayor's claims, leaving Cruise to incur attorney's fees and costs defending itself against Mr. Montemayor's claims in the Montemayor Lawsuit and potentially suffering a judgment in excess of $75,000 as a result of those claims.

*Aerotek/Actalent Fails To Submit Invoices Within 60 days of Work Performed.*

29. Despite its obligation under the Agreement to submit invoices to Cruise within 60 days of the Work that is invoiced is performed, Aerotek/Actalent repeatedly failed to submit invoices on time. These invoices total approximately $110,000.

*Cruise Terminates the Agreement and Refuses Payment of Aerotek/Actalent Invoices.*

30. Cruise has terminated the Agreement. Cruise has refused to pay certain of Aerotek/Actalent's invoices under the Agreement in an amount exceeding $75,000. In the Maryland Lawsuit, Actalent alleges that the unpaid amount of these invoices is $406,001.76. Cruise has refused to pay Aerotek/Actalent's invoices for the amount in dispute for three independent reasons.

(a) *First*, under California law,[1] "It is elementary a plaintiff suing for breach of contract must prove it has performed all conditions on its part or that it was excused from performance." *Plotnik v. Meihaus,* 208 Cal. App. 4th 1590, 1602 (2012) (citation omitted). Thus, "[o]ne who himself breaches a contract cannot recover for a subsequent breach by the other party." *Id.* (citation omitted). "[I]n contract law a material breach excuses further performance by the innocent party." *Id.* (citation omitted). Here, Aerotek/Actalent committed a prior material breach of the Agreement by refusing to indemnify, defend, and hold Cruise harmless against the claims in each of the Judd Lawsuit and the Montemayor Lawsuit. Aerotek/Actalent's breach has caused Cruise to incur fees and costs defending the Judd Lawsuit and Montemayor Lawsuit and to potentially suffer judgments in excess of $75,000 in the matters. Aerotek/Actalent's prior material breach of the Agreement thus excuses Cruise from further performing any obligations it may have

---

[1] The Agreement provides, "This Agreement is to be construed in accordance with and governed by the laws of the State of California without giving effect to any choice of law rule that would cause the application of the laws of any jurisdiction." Agreement at ¶ 8.2.

under the Agreement to Actalent, including the payment to Actalent of Aerotek/Actalent's allegedly invoiced amounts of $406,001.76.

(b)     *Second*, Cruise is entitled under the Agreement to setoff "indebtedness of [Aerotek/Actalent] to Cruise and its Affiliates" against "any amounts due to [Aerotek/Actalent]." Agreement at ¶ 4.4.  Cruise has already incurred attorney's fees and costs in the Judd and Montemayor Lawsuits, as a result of Aerotek/Actalent's refusal to indemnify, defend, and hold Cruise harmless against the claims in each of those lawsuits, and Cruise faces the potential of suffering settlements and judgments in excess of $75,000 in those lawsuits.  Cruise is entitled to setoff these amounts against Aerotek/Actalent's allegedly invoiced amounts of $406,001.76.

(c)     *Third*, Aerotek/Actalent failed to submit invoices to Cruise for Work within 60 days of the performance of that work, and thus Aerotek/Actalent "expressly forfeit[ed] any right to such payment." Agreement at ¶ 2.10.  The amount of such invoices exceeds $75,000.

## FIRST CLAIM FOR RELIEF

**(Breach of Contract)**

31.     Cruise incorporates by reference as though set forth herein each of the preceding allegations of each paragraph in this Complaint.

32.     On September 30, 2020, Cruise and Aerotek entered into the Agreement, which is a binding contract supported by offer, acceptance and mutual consideration.  Actalent purports to be successor-in-interest to Aerotek with regard to the Agreement.

33.     Cruise has fully performed its obligations under the Agreement, to the extent those obligations were not excused by Aerotek/Actalent's breaches thereof.

34.     Aerotek/Actalent breached the Agreement in multiple ways, including at least by refusing to indemnify, defend, and hold Cruise harmless against the claims asserted against Cruise in the Judd Lawsuit and the Montemayor Lawsuit.

35.     In the alternative, to the extent that Aerotek/Actalent did not breach any term of the Agreement, it breached the covenant of good faith and fair dealing by unfairly interfering with Cruise's right to receive the benefits of the contract.  The parties contemplated that one of the benefits of the Agreement was that Workers were to be treated as employees of Aerotek/Actalent,

not of Cruise, and that Aerotek/Actalent would therefore be responsible for acts or omissions of Workers that allegedly harmed third parties like Mr. Judd, as well as for any claims brought by Workers based on termination of employment decisions made by Aerotek/Actalent, such as Aerotek/Actalent's decision to terminate Mr. Montemayor's employment.  The parties also contemplated that another of the benefits of the Agreement was that Work under the Agreement would be timely invoiced for evaluation and payment by Cruise to avoid financial surprises months after the fact.

36. As a direct and proximate result of Aerotek/Actalent's breaches of the Agreement (or, alternatively, of the covenant of good faith and fair dealing), Cruise has suffered damages in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF

**(Declaratory Judgment That Actalent Has a Duty to Indemnify, Defend and Hold Harmless Cruise Against the Claims of the Judd Lawsuit)**

37. Cruise incorporates by reference as though set forth herein each of the preceding allegations of each paragraph in this Complaint.

38. There is a substantial controversy and a live dispute between the parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. The dispute, therefore, between Cruise and Aerotek/Actalent is a justiciable controversy appropriate for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

39. Aerotek/Actalent has refused to meet its obligation under the Agreement to "indemnify, defend, and hold Cruise … harmless" against the claims of the Judd Lawsuit.  Cruise has incurred attorney's fees and costs defending itself against Mr. Judd's claims in the Judd Lawsuit and a settlement payment in settling the lawsuit.

40. A declaratory judgment that Aerotek/Actalent has a duty to "indemnify, defend, and hold Cruise … harmless" against the claims of the Judd Lawsuit will also prevent the necessity of multiple successive lawsuits for breach of contract against Aerotek/Actalent each time

it refuses to "indemnify, defend, and hold Cruise … harmless" against similar claims brought against Cruise by different plaintiffs.

41. Accordingly, Cruise is entitled to the entry of a judgment declaring that Aerotek/Actalent must "indemnify, defend, and hold Cruise … harmless" against the claims of the Judd Lawsuit.

## THIRD CLAIM FOR RELIEF

**(Declaratory Judgment That Actalent Has a Duty to Indemnify, Defend and Hold Harmless Cruise Against the Claims of the Montemayor Lawsuit)**

42. Cruise incorporates by reference as though set forth herein each of the preceding allegations of each paragraph in this Complaint.

43. There is a substantial controversy and a live dispute between the parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. The dispute, therefore, between Cruise and Aerotek/Actalent is a justiciable controversy appropriate for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

44. Aerotek/Actalent has refused to meet its obligation under the Agreement to "indemnify, defend, and hold Cruise … harmless" against the claims of the Montemayor Lawsuit. Cruise has incurred attorney's fees and costs defending itself against Mr. Montemayor's claims in the Montemayor Lawsuit and faces the potential of suffering a judgment in excess of $75,000 as a result of those claims.

45. A declaratory judgment that Aerotek/Actalent has a duty to "indemnify, defend, and hold Cruise … harmless" against the claims of the Montemayor Lawsuit will also prevent the necessity of multiple successive lawsuits for breach of contract against Aerotek/Actalent each time it refuses to "indemnify, defend, and hold Cruise … harmless" against similar claims brought against Cruise by different plaintiffs.

46. Accordingly, Cruise is entitled to the entry of a judgment declaring that Aerotek/Actalent must "indemnify, defend, and hold Cruise … harmless" against the claims of the Montemayor Lawsuit.

## FOURTH CLAIM FOR RELIEF

**(Declaratory Judgment That Cruise Is Entitled to Setoff Amounts Aerotek/Actalent Owes to Cruise Against Amounts Cruise Allegedly Owes to Aerotek/Actalent)**

47. Cruise incorporates by reference as though set forth herein each of the preceding allegations of each paragraph in this Complaint.

48. There is a substantial controversy and a live dispute between the parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. The dispute, therefore, between Cruise and Aerotek/Actalent is a justiciable controversy appropriate for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

49. Aerotek/Actalent denies that under the Agreement Cruise has the "right to setoff against or to recoup from any amounts due to [Aerotek/Actalent] from Cruise" the damages Cruise has suffered as a result of Aerotek/Actalent's breach of the Agreement, including without limitation, the attorney's fees, costs, and settlement payments Cruise has incurred due to Aerotek/Actalent's refusal to indemnify, defend, and hold Cruise harmless against the claims of the Judd Lawsuit and the Montemayor Lawsuit.

50. Accordingly, Cruise is entitled to the entry of a judgment declaring that Cruise is entitled to setoff or recoup from any amounts due to Aerotek/Actalent from Cruise the damages Cruise has suffered as a result of Aerotek/Actalent's breach of the Agreement, including without limitation, the attorney's fees, costs, and settlement payments Cruise has incurred due to Aerotek/Actalent's refusal to indemnify, defend, and hold Cruise harmless against the claims of the Judd Lawsuit and the Montemayor Lawsuit.

## FIFTH CLAIM FOR RELIEF

**(Declaratory Judgment That Cruise Did Not Breach the Parties' Agreement Due to Aerotek/Actalent's Prior Material Breach of the Agreement)**

51. Cruise incorporates by reference as though set forth herein each of the preceding allegations of each paragraph in this Complaint.

52. There is a substantial controversy and a live dispute between the parties having

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
(415) 954-4400

COMPLAINT                                   14                                   43521\16085209.1

adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. The dispute, therefore, between Cruise and Aerotek/Actalent is a justiciable controversy appropriate for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

53. Aerotek/Actalent materially breached the Agreement when it refused to "indemnify, defend, and hold Cruise … harmless" against the claims of the Judd Lawsuit.

54. Aerotek/Actalent further materially breached the Agreement when it refused to "indemnify, defend, and hold Cruise … harmless" against the claims of the Montemayor Lawsuit.

55. Prior to Aerotek/Actalent materially breaching the Agreement, Cruise had fulfilled all of its obligations under the Agreement.

56. Accordingly, Cruise is entitled to the entry of a judgment declaring that it did not breach of the Agreement because it has refused to pay Aerotek/Actalent any of the $406,001.76 Aerotek/Actalent claims Cruise owes it under the Agreement due to Aerotek/Actalent's prior material breach of the Agreement, which excused Cruise from further performance of the Agreement.

## SIXTH CLAIM FOR RELIEF

**(Declaratory Judgment That Aerotek/Actalent's Has Forfeited Amounts Not Invoiced Within 60 Days)**

57. Cruise incorporates by reference as though set forth herein each of the preceding allegations of each paragraph in this Complaint.

58. There is a substantial controversy and a live dispute between the parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. The dispute, therefore, between Cruise and Aerotek/Actalent is a justiciable controversy appropriate for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

59. Aerotek/Actalent denies that under the Agreement it has forfeited approximately $110,000 that it failed to invoice to Cruise within 60 days after the Work invoiced was performed.

60. Accordingly, Cruise is entitled to the entry of a judgment declaring that

Aerotek/Actalent has forfeited any amounts that it failed to invoice to Cruise within 60 days after the Work invoiced was performed.

## PRAYER FOR RELIEF

WHEREFORE, Cruise prays for judgment against Aerotek/Actalent as follows:

1. That Aerotek/Actalent materially breached the parties' Agreement at least by refusing to indemnify, defend, and hold Cruise harmless against the claims asserted against Cruise in the Judd Lawsuit and the Montemayor Lawsuit;

2. That Cruise is entitled to damages from Aerotek/Actalent according to proof;

3. Declaring that Aerotek/Actalent must indemnify, defend, and hold Cruise harmless against the claims of the Judd Lawsuit;

4. Declaring that Aerotek/Actalent must indemnify, defend, and hold Cruise harmless against the claims of the Montemayor Lawsuit;

5. Declaring that Cruise is entitled to setoff or recoup from any amounts due to Aerotek/Actalent from Cruise under the parties' Agreement the damages Cruise has suffered as a result of Aerotek/Actalent's breach of the Agreement, in an amount to be proven at trial;

6. Declaring that Cruise did not breach the Agreement because it has refused to pay Aerotek/Actalent any of the $406,001.76 Aerotek/Actalent claims Cruise owes it under the Agreement due to Aerotek/Actalent's prior material breach of the Agreement;

7. Declaring that Aerotek/Actalent has forfeited any amounts that it failed to invoice to Cruise within 60 days after the Work invoiced was performed, in an amount to be proven at trial;

8. For attorney's fees as may be allowed by law or by contract;

9. For prejudgment and post-judgment interest;

10. For costs of suit; and

11. For such other relief as the Court may deem just and proper.

## JURY DEMAND

Cruise demands a jury trial on all claims and issues that are so triable.

Dated: April 20, 2023

FARELLA BRAUN + MARTEL LLP

By:    */s/ Erik C. Olson*
      Erik C. Olson

Attorneys for Plaintiff, CRUISE LLC